274 N.J. Super. 620 (1993)
644 A.2d 1150
MIROSLAW ROSZKOWSKI, PLAINTIFF,
v.
GRAZYNA ROSZKOWSKA, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Union County.
Decided December 8, 1993.
*625 Elliot H. Gourvitz for plaintiff (Elliot H. Gourvitz, P.A., Richard Outhwaite on the brief).
Kevin J. Daly for defendant (Kevin J. Daly, P.C.).
WHITKEN, J.S.C.

PROCEDURAL HISTORY
On July 27, 1993 the plaintiff, Miroslaw Roszkowski, filed a complaint for divorce against his wife, Grazyna Roszkowska, based upon the grounds of extreme cruelty and further alleging that the defendant, without his consent, removed their child, Rafal, from the jurisdiction of New Jersey and sent the child to Poland. The plaintiff, in his complaint, seeks a dissolution of the marriage, sole legal and residential custody of Rafal with reasonable visitation to the defendant, that the defendant surrender her passport during the periods of visitation, and further seeks child support from the defendant, as well as equitable distribution and counsel fees.
A motion on short notice was thereafter filed by the plaintiff, returnable August 6, 1993, seeking pendente lite custody of Rafal, compelling the defendant to return Rafal to New Jersey within ten days and thereafter prohibiting her from removing Rafal from New Jersey without further order of the Court, requesting that this Court retain jurisdiction over Rafal, demanding that the *626 defendant immediately surrender her passport to the court, and incarcerating her if the child is not returned within ten days. The plaintiff further sought a probation department investigation as to the issue of permanent custody along with an examination of the defendant and the child by a psychologist.
Kevin J. Daly, Esq. was thereafter appointed by the Honorable Ross R. Anzaldi to represent the defendant; a cross-motion was filed on behalf of the defendant requesting that the court deny the plaintiff's motion in its entirety or, in the alternative, awarding custody of the child to the defendant, and for counsel fees.
Thereafter, the matter was assigned to this court at which time a plenary hearing was held for the sole purpose of determining whether this court had jurisdiction to determine the issue of custody and whether this court had jurisdiction to enter an order requiring Rafal to be returned from Poland to New Jersey.

FINDINGS OF FACT
I find that the parties were married on April 19, 1986 in Bialystok, Poland, and Rafal was born on February 21, 1989 in Poland.
The plaintiff presently resides at 430 Vine Street in Elizabeth whereas the defendant resides in an apartment in Staten Island, New York, on weekends and works in Brooklyn, New York during the week. Both parties are Polish citizens as is Rafal.
The plaintiff arrived in the United States from Poland on September 27, 1989, seeking employment, which was approximately seven months after Rafal was born. Rafal lived with the defendant, who remained in Poland, during this period of time. The plaintiff visited the defendant and his son in Poland on two occasions: once in February of 1992 and thereafter from August to September of 1992.
On December 21, 1992 the defendant and Rafal arrived in the United States and resided with the plaintiff in New Brunswick, New Jersey. When the defendant and Rafal came to the United *627 States, they each possessed a visitor's visa with expiration dates of March 21, 1993, which may have been extended to November 1994, although no proof of same was submitted to the court. On the second day that the defendant was in the United States, the plaintiff advised her that he had a girl friend and, as of the date of the hearing before this court, the plaintiff admitted that his girl friend had, in fact, recently delivered his child. The plaintiff then changed jobs and moved to his present address in Elizabeth, although the defendant and Rafal remained in New Brunswick.
Some time in March of 1993, the defendant moved to an apartment in Staten Island and Rafal resided with the plaintiff a minimum of five nights per week and sometimes six nights per week in Elizabeth. The plaintiff enrolled Rafal in a Montessori School in Staten Island and, in fact, transported Rafal back and forth to the school. During this period of time he also took Rafal to the doctors when required.
On July 18, 1993, the defendant sent Rafal back to Poland and indicated she was going to stay here to attempt to work through her marital problems with the plaintiff; she contends that the plaintiff knew Rafal was being sent to Poland and he approved of this arrangement. The plaintiff denies that he knew Rafal was being returned to Poland permanently and stated that it was his understanding that Rafal was merely going for a visit.
The parties have stipulated that Rafal was physically in the State of New Jersey from December 21, 1992 to July 18, 1993, which is a period slightly in excess of six months.

LAW
The plaintiff posits the theory that since this Court has in personam jurisdiction over both the plaintiff and defendant,[1] this Court has jurisdiction to order the return of their child, Rafal, *628 from Poland and to determine custody. Specifically, the plaintiff argues that "[t]he court only need find that there is jurisdiction over the parties (rather than the child) in order to compel the parties to submit to the Orders of this court." See Letter Brief of Plaintiff, dated September 10, 1993, at 8. However, it has been noted that "[b]ecause jurisdiction over child custody determinations derives from the child's contacts with the state, a parent's contacts with the state are irrelevant." Monica J. Allen, Child-State Jurisdiction: A Due Process Invitation to Reconsider Some Basic Family Law Assumptions, 26 Family L.Q. 293, 306 (1992). Thus, the Court must examine the nature of the child's contacts with the state to ascertain whether they are sufficient to confer jurisdiction in accordance with both statutory law and the Hague Convention.
Under New Jersey statutory law, the Superior Court has jurisdiction over child custody disputes and is empowered to make a ruling provided that certain condition precedents are satisfied. Most importantly under the Uniform Child Custody Jurisdiction Act ("UCCJA"), jurisdiction is conferred when New Jersey:
(i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State ...
[N.J.S.A. 2A:34-31(a)(1).]
The statute further provides that the "[p]hysical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody." Id. 2A:34-31(c).
Thus, the first jurisdictional requirement is that the forum be the child's "home state," which is defined as:
the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period.
[N.J.S.A. 2A:34-30(e), codifying Uniform Child Custody Jurisdiction Act § 3(1).]
*629 See also Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A(b)(4).
The UCCJA was intended primarily to pertain to the states, territories, and possessions of the United States as well as the District of Columbia and the Commonwealth of Puerto Rico. N.J.S.A. 2A:34-30(j). The present case involves Poland and New Jersey and, thus, is not a dispute contemplated by the UCCJA. Furthermore, "[t]he UCCJA only applies to an international child custody case when the State is asked to recognize and enforce decrees of foreign countries." Schmidt v. Schmidt, 227 N.J. Super. 528, 548 A.2d 195 (App.Div. 1988). This limitation has been defined as such:
while the UCCJA is reciprocal among those states and territories of the United States which have enacted it; it is not reciprocal between the United States and any other country. While Section 23 of the UCCJA makes it applicable to the international arena, the UCCJA does not contain language providing for judicial reciprocity. Thus, the UCCJA only recognizes and enforces foreign and domestic custody decrees within the United States and its territories. A state court in the United States, under the UCCJA, may enforce custody or visitation rights ordered by a foreign court against a United States citizen but it cannot order a citizen of another country to return a child to the United States. ... In international child custody disputes, United States courts should favor ICARA [International Child Abduction Remedies Act, 42 U.S.C.A. §§ 11601-11610] over the UCCJA.
[Julia R. Rutherford, Note, Removing the Tactical Advantages of International Parental Child Abductions under the 1980 Hague Convention on the Civil Aspects of International Child Abduction, 8 Ariz.J.Int'l & Comparative Law 149, 152 (1991) (emphasis added) [hereinafter International Parental Child Abductions].]
Here, there is no Polish decree requiring enforcement; rather, the plaintiff seeks to have this court order the defendant, a Polish citizen, to return the child to New Jersey for a custody determination. Thus, on its face, the UCCJA does not apply to the current dispute. See also Warren Cole, Border Crossing, A.B.A.J., July 1993, at 90.
The Hague Convention on the Civil Aspects of International Child Abduction[2] [hereinafter "the Hague Convention"] "streamlines *630 judicial procedures for obtaining the return of internationally abducted children." Edward S. Snyder, Convention Aids Returns in Abduction Cases, N.J.L.J., Nov. 15, 1993, at 11. The scope of the Hague Convention "establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights." 42 U.S.C.A. § 11601(a)(4). "The Convention seeks only to return a child to the status quo prior to the wrongful retention or removal." International Parental Child Abductions, supra, at 151. Specifically, the Hague Convention's objectives are:

a. to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

b. to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.
[Hague Convention art. 1.]
Both the United States and Poland are signatories to the Hague Convention. The United States deposited its instrument of ratification of the Convention with the Ministry of Foreign Affairs of the Kingdom of the Netherlands on April 29, 1988; Poland did so on August 10, 1992. Hague Convention n. 11, 6c. In accordance with Article 43 of the Hague Convention, the treaty entered into force on July 1, 1988 for the United States, whereas it entered into force for Poland on November 1, 1992. Id. Of equal importance is the fact that should the present scenario be found to be within the contemplation of the Hague Convention, this Court has "concurrent original jurisdiction of actions arising under the Convention" with the United States District Courts. 42 U.S.C.A. § 11603(a).
Under the Hague Convention, a custody determination is left to the law of the state to which the child is returned. "The Convention provides only a mechanism for determining whether a child has been wrongfully removed or retained. Any decision on, enforcement, or modification of the custody dispute or decree is left to the appropriate judicial or administrative agency of the child's home State." International Parental Child Abductions, supra, at 151. (footnotes omitted). Under the Hague Convention, *631 a "court is empowered to determine the merits of an alleged abduction, but not the merits of the underlying custody claims or issues." Meredith v. Meredith, 759 F. Supp. 1432, 1434 (D.Ariz. 1991). Further, the Meredith court noted that "[c]ustody rights are determined by the law of the child's habitual residence." Id.
In Schmidt, supra, 227 N.J. Super. at 534, 548 A.2d 195, the Appellate Division found that the Hague Convention did not apply even though the United States had signed it on December 23, 1981 and the Senate had thereafter given its advice and consent on October 9, 1986. The sole reason the Hague Convention was deemed to be inapplicable was the fact that Congress had not enacted legislation setting forth the procedures necessary to implement the Hague Convention. Id. Since the Schmidt decision, however, Congress has codified the procedures in the International Child Abduction Remedies Act[3] (ICARA) at 42 U.S.C.A. §§ 11601-11610. See also Linda K. Girdner, Obstacles to the Recovery and Return of Parentally Abducted Children, 13 Children's Legal Rights J. 2-6 (1992).
Accordingly, "[t]he Hague Convention is the starting point when a child is believed to have been illegally removed to, or is being illegally retained in another country." Cole, supra, at 90. The Hague Convention's focus is on "situations involving removal from the United States to a foreign country and vice versa." Id. *632 Note, however, that it is "not an extradition treaty and contains no provision for the imposition of criminal sanctions." Id.
The Hague Convention may be invoked in one of two ways. The primary, and most common, method is for the party seeking the return of the child to contact the central authority of the country in which that party resides; in the United States, the central authority is the Department of State. Hague Convention art. 8 and n. 11. See also Lon Vinion, When Custody Conflicts Cross the Border, Family Advocate, Spring 1993, at 30. Under this procedure, the plaintiff could have contacted the United States Department of State, which in turn would have contacted the appropriate authority in Poland. However, the plaintiff chose not to pursue this route.
The plaintiff has chosen to use the Hague Convention's alternative, which is set forth in Article 29:
This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.
[Hague Convention art. 29.]
"In other words, instead of contacting a central authority, an individual may file directly in the appropriate local jurisdiction for the return of a child being wrongfully held." Vinion, supra, at 30-31. This route is specifically provided for in 42 U.S.C.A. § 11603(b). This court is within the definition of "authorities" and thus may properly decide this issue. Id. § 11603(f)(1). Furthermore, this Court has subject-matter jurisdiction. Id. § 11603(a).
Since the plaintiff is seeking relief, the plaintiff is designated the "petitioner" whereas the defendant is the "respondent." Id. § 11602(4), (6). The burden of proof is on the petitioner to show that the child has been wrongfully removed, as contemplated by the Hague Convention, by a preponderance of the evidence. Id. § 11603(e)(1)(A). Thus before reaching a determination, this Court must consider the Hague Convention's prerequisites and the petitioner's pleadings.
*633 The first requirement is that both countries involved be signatories to the Hague Convention. Here, as previously discussed, this requisite is easily satisfied since it is undisputed that both Poland and the United States are signatories.
The second requirement is that the party petitioning the court must demonstrate that the child involved was "habitually resident in a Contracting State immediately before any breach of custody," which encompasses a wrongful removal. Hague Convention art. 4. "Habitual residence has been defined as the child's usual place of residence and primary home immediately before he or she was removed to a foreign country." Vinion, supra, at 32 (citing 51 Fed.Reg. 10,504 (1980)). Unfortunately, the Hague Convention does not explicitly define this term. Given that this term is not expressly delineated, one commentator observed that:
in most cases it should not be difficult to ascertain what the state of habitual residence is. Habitual residence is akin to domicile; it may be looked at as a place that is the focus of the child's life.
[Snyder, supra, at 31.]
In Meredith, supra, 759 F. Supp. at 1434, the court stated "`[h]abitual residence' is an undefined term in the Convention. It is apparent that it must be determined by the facts and circumstances presented in each particular case." The Meredith case involved a family living in Arizona and comprised of a mother, who was a French citizen, and a father, an American citizen. Id. at 1432. The mother removed the child to France and finally England. Id. at 1433. The court found that the mother removed the child to these two foreign countries in order to obtain a custody award in her favor. Id. at 1435. The court also found that until the mother's misrepresentation that she was taking the child to France only for a holiday visit, the child had lived continuously in Arizona and had been born there. As such, the court found the child's "habitual residence" to have been Arizona. Id. at 1436. The Meredith court observed that:
[t]o equate the temporary removal and subsequent sequestration of the minor child to legal status of "habitual residence" in another country would be to reward [the *634 mother] for her ability to conceal the child from the [father], her lawful, custodial parent.
[Id. at 1435.]
Thus, a determination as to what constitutes the child's "habitual residence" involves consideration of the child's contacts with a given state, as well as each parent's conduct.
I find that based upon the facts in the matter before this court the habitual residence of Rafal immediately before the wrongful removal was in fact New Jersey. Rafal lived in New Jersey initially with both of his parents, then with his mother and finally with his father for more than six months; during this period of time, Rafal attended a nursery school in Staten Island. Both of his parents resided in New Jersey during that period of time and in fact, as of this date, his father still resides in New Jersey, whereas his mother resides in New York.
Given that "habitual residence" is an undefined term, it is appropriate to look to the law of New Jersey for guidance. As previously stated, New Jersey applies the UCCJA to child custody disputes. Under New Jersey law, the child's home state is the state where the child resided for six months immediately prior to the action. Here, the six month requirement is satisfied and both parties do not dispute that Rafal lived in New Jersey for a six month plus period. Thus, under New Jersey law, New Jersey is the home state of Rafal. Accordingly, Rafal's home state will be considered to be his "habitual residence" for purposes of the Hague Convention.
Although an argument can be made that Rafal is a Polish citizen and has lived in Poland his entire life other than for the six month plus period of time when he was residing in the United States, this court is satisfied that New Jersey was in fact his "habitual residence" at the time he was wrongfully removed from New Jersey and remains so during his current unlawful detention in Poland.
The third prerequisite under the Hague Convention is that the child be under the age of 16. Hague Convention art. 4. Here, *635 Rafal is 4 1/2 years old and thereby within the Convention's contemplation.
The final requirement is that a wrongful removal or retention of the child must have occurred. Id. art. 3. The most obvious example of a wrongful removal or retention is when "it violates the custody rights of an individual who was exercising those rights, and who would have continued to do so had the child not been removed." Vinion, supra, at 32. Note that "the terms `wrongful removal or retention' and `wrongfully removed or retained'" as used in the Convention, include a "removal or retention of a child before the entry of a custody order regarding that child." 42 U.S.C.A. § 11603(f)(2) (emphasis added). As is the case here, no custody order has been entered. Nevertheless, the lack of an order does not act as an automatic bar.
Custody rights may arise in one of three ways: by agreement carrying legal effect, by judicial order, or by operation of law. Hague Convention art. 3. In the present case, no custody decision has been made by this court, and this court has no knowledge of any Polish custody orders. However, Rafal had been living with the plaintiff up until the time that the defendant unilaterally decided to return the child to Poland as a permanent solution. Thus, by operation of law, the plaintiff has acquired custody rights and has demonstrated an intense desire to exercise those rights. Furthermore, "Article 3 provides that [the] determination whether the party who has requested mandatory return is indeed vested with rights of custody should be based on the `law of the State in which the child was habitually resident immediately before the removal or retention.'" Viragh v. Foldes, 415 Mass. 96, 612 N.E.2d 241, 247 (1993) (discussing a noncustodial parent's rights of access for purposes of visitation under the Hague Convention). Thus, based on this Court's findings of fact and New Jersey law, it is apparent that the plaintiff/petitioner was exercising his rights of custody at the time Rafal was removed from the United States.
*636 Abduction occurs when a parent removes a child from one Contracting State without the other parent's consent or when a parent wrongfully detains a child from returning even if the other parent had originally consented to the departure. "Even when the removal is not initially violative  [for example] for visitation with a parent in another country  if that parent refuses to return the child, the retention becomes unlawful under the act." Vinion, supra, at 32. Under the Hague Convention, "rights of custody shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention art. 5a. Here, the plaintiff has exercised his custody rights and objects to the defendant's actions which have prevented the child from returning to the United States from Poland.
Based on the foregoing, it appears that the four requirements necessary for invocation of the Hague Convention have been satisfied. As such, "the responding court [namely the Polish judicial system] is obligated to return the child to his or her country of habitual residence." Vinion, supra, at 32. The Hague Convention merely addresses the jurisdictional issue; it does not consider the best interests of the child. Id. This is in light of the fact that "[w]hen a child has been removed or retained in breach of rights of custody, and no exceptions set forth in art. 13 have been established, the Convention mandates that the nation to which the child has been taken order the return of the child to its habitual residence `forthwith.'" Viragh, supra, 612 N.E.2d at 246-47.
Once the Hague Convention is deemed applicable, certain defenses are available to the objecting party. Some of the feasible defenses are:
(1) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention [Hague Convention art. 13a], or
(2) [the person seeking the child's return] had consented to or subsequently acquiesced in the removal or retention [Hague Convention art. 13a]; or

*637 (3) there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation[4] [Hague Convention art. 13b]; or
(4) [t]he return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms [Hague Convention art. 20].
As a consequence, "[c]hildren who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 42 U.S.C.A. § 11601(a)(4).
The burden of proof for exceptions number 1 and 2 as set forth above is on the respondent (defendant) and by a preponderance of the evidence. 42 U.S.C.A. § 11603(e)(2)(B). The burden of proof for exceptions number 3 and 4 as set forth above is on the respondent (defendant) and by clear and convincing evidence. Id. § 11603(e)(2)(A).
In the present matter, none of the defenses appear to apply. Firstly, the plaintiff, who has requested the return, was in physical custody of the child until the child's departure for Poland and thus had custody rights by operation of law. The fact that there was no formal decree of custody is of no import. It is also apparent that the plaintiff has neither acquiesced in the removal of Rafal to Poland nor certainly his remaining in Poland, given that he filed his complaint for divorce and return of the child within two weeks after the child was removed. Also, there is no grave risk to the child in New Jersey which is apparent at this time. Finally, both the United States and Poland are signatories to the Hague Convention and do not violate human rights or impinge *638 upon fundamental freedoms.[5] Furthermore, the defendant has not pleaded any of these defenses and has consequently not satisfied her burdens of proof. Thus, the defendant has no viable defense to this Court's application of the Hague Convention.
There are some additional exceptions which require only a cursory mention in this case. The first exception applies when "[t]he judicial or administrative authority ... finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention art. 13b. The burden of proof for this exception is on the respondent by clear and convincing evidence. 42 U.S.C.A. § 11603(e)(2)(A). Here, the child is merely 4 1/2 years old and not of a suitable age to express an opinion.
The next exception involves the situation wherein "the petitioning party has waited more than one year to initiate action against the child's removal and the responding court finds that the child is now settled in his or her new environment." Vinion, supra, at 32; Hague Convention art. 12. The burden of proof in this situation is on the respondent by a preponderance of the evidence. 42 U.S.C.A. § 11603(e)(2)(B). As the plaintiff moved expediently after the wrongful removal, this exception is likewise not invoked.
Once the Court determines that a wrongful removal or retention as contemplated by the Hague Convention has occurred, it may assess certain civil sanctions against the party who is ordered to return the child. Accordingly, "if a court finds the [petitioner] is entitled to enforcement, it shall order the respondent to pay necessary legal fees incurred by the [petitioner], court costs, foster home care, transportation costs to return the child, and other costs of the child." Cole, supra, at 90. In the Schmidt case, the Appellate Division instructed the trial court to consider the defendant's unilateral action of removing the child in its *639 decision of whether to make "the defendant share in the plaintiff's extra expenses to be incurred because New Jersey [and not West Germany] retains jurisdiction." 227 N.J. Super. at 534, 548 A.2d 195. Thus as a sanction, the Hague Convention permits a court to "require the adverse party to pay legal and travel expenses and costs incurred locating the child when circumstances make such an award appropriate." Vinion, supra, at 34. This sanction, provided for in Article 26 of the Hague Convention, is codified as follows:
Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.
[42 U.S.C.A. § 11607(b)(3).]
As the defendant misrepresented the purpose of Rafal's departure to Poland to the plaintiff and, thus, has effectively thwarted the plaintiff's rights of custody, this court is satisfied that the defendant should bear the costs associated with returning Rafal to New Jersey. This court will reserve as to the issue of the defendant's liability, as a sanction permitted under the Hague Convention, for the plaintiff's legal fees and costs associated with this motion until such time as the parties' respective incomes can be ascertained and analyzed.
Furthermore, in the majority of abduction cases, one parent leaves a country with the child or remains in another country with the child. Here, the defendant has sent the child to reside with her grandparents in Poland while the plaintiff and defendant remain here in the United States. This Court is satisfied that New Jersey was the habitual residence of the child and, but for the defendant's unilateral actions, it would have continued to be such. In conclusion, it should be noted that:
[a]lthough international child custody cases provide a novel area of practice, when two countries signatory to the Hague Convention are involved, the question of which country has jurisdiction will not be a subject of dispute. The clear dictates of the convention provide the answer.
[Vinion, supra, at 35.]
*640 For the foregoing reasons, it is ORDERED that pursuant to the Hague Convention, the defendant is required to return Rafal from Poland to the United States, particularly, New Jersey.
It is further ORDERED that the defendant shall bear the costs associated with the return of Rafal to the United States, and this Court reserves on the issue of the defendant's liability for the plaintiff's legal fees and costs associated with this motion.
The Union County Probation Department is directed to conduct a "best interest" evaluation and counsel are directed to communicate with the Court so psychological evaluations can be obtained and the Court can address whether a guardian ad litem should be appointed for Rafal.
This decision is contingent upon the ability of Rafal to obtain a visa to permit him entry into the United States and in that regard will be subject to the appropriate immigration law. However, this Court recognizes that treaties are the "supreme law of the land" under Missouri v. Holland, 252 U.S. 416, 433, 40 S.Ct. 382, 383, 64 L.Ed. 641, 647 (1920) and Article VI, Clause 2 of the United States Constitution. Consequently, the Hague Convention should take precedence over any conflicting immigration law.
The attorney for the plaintiff is directed to prepare an order in accordance with this decision.
NOTES
[1] A consent order, filed on October 13, 1993, extended the period of time for the defendant to file an answer to the plaintiff's complaint for divorce until after the issue concerning this court's jurisdiction over Rafal is resolved.
[2] 51 Fed.Reg. 10,498 (1986).
[3] One law review commentator noted that there is a sparsity of case law interpreting the ICARA provisions. As of early 1991, In re Mohsen, 715 F. Supp. 1063 (D.Wyo. 1989), was the only case which mentioned this statute. Julia R. Rutherford, Note, Removing the Tactical Advantages of International Parental Child Abductions under the 1980 Hague Convention on the Civil Aspects of International Child Abduction, 8 Ariz.J.Int'l & Comp.Law 149, 153 n. 30 (1991). Since that time, a New Jersey case has provided a cursory review of the ICARA provisions. Duquette v. Tahan, 252 N.J. Super. 554, 600 A.2d 472 (App.Div. 1991). Apparently, most state courts rely on the UCCJA since it is well-established. "However, as federal law, the ICARA must be applied to disputes between citizens of Contracting States, under the Supremacy Clause of the United States Constitution and the Erie Doctrine." International Parental Child Abductions, supra, at 153 (footnotes omitted).
[4] Note that this defense requires that the grave risk be self-evident at the time of the request for return. A plenary hearing cannot be held to determine whether a grave risk is potentially possible. Similarly, psychological evaluations of the parties prior to a decision, as well as investigations of the two countries for purposes of suitability, are not permitted.
[5] To the contrary, Somalia or Iraq would be prime examples of nations that, arguably, fail to promote and protect basic human rights.