288 N.J. Super. 575 (1996)
672 A.2d 1226
JEAN JACQUES MARCEL IVALDI, PLAINTIFF-RESPONDENT,
v.
LAMIA KHRIBECHE IVALDI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1996.
Decided March 15, 1996.
*578 Before MICHELS, BAIME and VILLANUEVA, JJ.
Daniel C. Fleming argued the cause for appellant (Wong, Tsai & Fleming, attorneys; (Mr. Fleming, on the letter-brief)).
*579 Patricia E. Apy argued the cause for respondent (Chattman, Sutula, Friedlander & Paul, attorneys; Ms. Apy, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
We granted defendant's motion for leave to appeal from the Family Part's order directing her to return her child to the United States, restraining her from continuing custody proceedings in any other jurisdiction, and awarding temporary custody of the child to plaintiff. Defendant had taken the child to Morocco, where the parties had resided before coming to the United States, pursuant to a separation agreement which granted her sole physical custody and permitted her to take up residence with the child in another country. We hold that the Family Part lacked subject matter jurisdiction and, in any event, should have deferred to the divorce and custody proceedings that had already commenced in Morocco.

I.
The facts are not in dispute. Plaintiff holds both American and French citizenship. Defendant is a citizen of Morocco. The parties were married pursuant to Islamic law by a Moroccan court in 1992. Following their marriage, the couple moved to France where their daughter Lina was born in 1993. In the latter part of 1993, the parties moved to Morocco. When their business plans failed, the couple emigrated to New Jersey, where plaintiff's parents operated a restaurant. While residing in New Jersey, the parties' marital relationship deteriorated, causing plaintiff to leave the family residence and move into his parents' house.
On February 22, 1995, the parties entered into a separation agreement under which they retained joint legal custody, but physical custody was granted to defendant. The agreement provided that defendant and Lina could take up residence in another country so long as defendant abided with the provisions of the agreement. Plaintiff was given twelve weeks of visitation with the child each year in the country where he resided, but was required *580 to pay all travel expenses incurred in connection with that visitation. The period of visitation was to be determined by plaintiff. In turn, plaintiff was required to pay child support in the weekly amount of $125 until Lina's emancipation. The agreement granted defendant permission to obtain a divorce pursuant to Islamic law.
In the event of a breach of the agreement, the non-breaching party was required to provide the defaulting party with written notice of the breach by certified mail and allow thirty days to cure the breach. The agreement, which was to be interpreted according to the principles of New Jersey law, was to be incorporated into any divorce judgment obtained by the parties.
Within a week of the execution of the agreement, Lina was sent to live with defendant's parents in Morocco. Defendant herself moved to Morocco in April 1995. Sometime between April 27 and May 3, 1995, defendant filed a petition for divorce and custody in the Primary Court of Rabat. Plaintiff was served with the summons and complaint and was ordered to appear before the Primary Court on October 16, 1995 for a hearing on the petition.
Plaintiff filed a complaint in the Family Part on May 2, 1995, in which he sought a judgment of divorce, equitable distribution, sole custody of Lina, and child support. Defendant was served with the summons and complaint on August 8, 1995, and filed a motion to dismiss several days later. The court denied defendant's motion. Although the Family Part judge's oral opinion is not a paragon of clarity, he apparently found that the New Jersey courts had subject matter jurisdiction and that New Jersey constituted Lina's "home state." The judge seemingly determined that defendant had wrongfully removed Lina from New Jersey to Morocco. We derive that interpretation from the judge's allusion to defendant's holding the New Jersey courts "hostage." In any event, the judge scheduled a hearing to determine the child's best interests, ordered defendant to return Lina to the United States within a week, and awarded plaintiff sole custody of the child pending disposition of the issues. In addition, the judge restrained *581 defendant from proceeding with her petition for custody in Morocco.
Defendant filed a motion for leave to appeal. We granted a temporary stay pending disposition of the motion and requested the Family Part judge to supplement his oral opinion with a written statement of reasons. In his supplemental opinion, the judge acknowledged that the Uniform Child Custody Jurisdiction Act (N.J.S.A. 2A:34-28 to -52) (UCCJA) was not applicable. The judge also noted that the Hague Convention was not applicable because Morocco is not a signatory to the treaty. The judge nevertheless determined that New Jersey was Lina's home state based upon the length of time she had resided here. The judge also found that defendant had removed Lina from New Jersey by "subterfuge" and that the provision in the separation agreement allowing defendant to take up residence in another country with Lina was not applicable because defendant had breached the agreement by refusing to permit plaintiff to exercise his right of visitation. We granted defendant's motion for leave to appeal following receipt of the Family Part judge's supplemental opinion. We also continued our stay of the Family Part's order pending disposition of the appeal, which has been accelerated.

II.
Initially, we find no basis in the record for the Family Part judge's conclusion that defendant wrongfully removed Lina from New Jersey to Morocco. The separation agreement clearly contemplated that defendant would leave the United States with Lina and take up residence in another country. This is not a matter of interpretation. The agreement expressly granted defendant permission to take this course.
So too, the record is barren of anything supporting the judge's finding that defendant breached the agreement by denying plaintiff's right of visitation. Although plaintiff in his affidavit which accompanied his complaint alleged in conclusory fashion that he had not been permitted to visit Lina, it is undisputed that *582 he never made any support payments as required by the agreement. He also neither tendered nor offered to tender travel expenses, a precondition to his right of visitation, until April 17, 1995. Moreover, plaintiff never gave written notice of the alleged breach which would have triggered the opportunity to cure the alleged default within thirty days. It is true that on April 17, 1995, plaintiff's lawyer represented in a letter to defendant's attorney that plaintiff was willing to travel to Rabat to pick up the child and exercise his right of visitation. However, defendant was reluctant to accept this arrangement because of problems involving Lina's passport and her fear that the child would not be returned. In any event, assuming that defendant's refusal to accede to plaintiff's demand constituted a breach of the agreement, this default occurred long after the child had been lawfully removed from the United States to Morocco. Moreover, plaintiff filed his complaint sixteen days after his attorney's demand, a clear violation of the provision in the separation agreement allowing the defaulting party an opportunity to cure within thirty days. Of course, once plaintiff filed his complaint seeking custody in derogation of the express terms of the agreement, defendant's fear that plaintiff would not return the child if visitation were permitted became a concrete reality.
This is not a case in which a child was spirited away from his or her custodial parent. The judge's finding to the contrary is clearly a mistaken one and is so plainly unwarranted that the interests of justice demand our intervention and correction. See State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). The judge went so wide of the mark that a mistake must have been made. Ibid.

III.
The Family Part judge's determination that the New Jersey courts had subject matter jurisdiction was less than precise. We thus examine possible sources of jurisdictional authority.

*583 A. State Statutes

We agree with the judge's determination that the UCCJA is not applicable to this case. The UCCJA was formulated by the National Conference of Commissioners on Uniform State Laws in response to the United States Supreme Court's failure to delineate in detail the extent to which the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, requires states to honor the child custody decrees of other states. E.E.B. v. D.A., 89 N.J. 595, 602-03, 446 A.2d 871 (1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445 (1983); see generally Neger v. Neger, 93 N.J. 15, 24-25, 459 A.2d 628 (1983); Borys v. Borys, 76 N.J. 103, 109-18, 386 A.2d 366 (1978). In line with the vast majority of states, New Jersey enacted its version of the UCCJA in 1979. L. 1979, c. 124, § 1. According to the legislative findings, the articulated objectives of the statute were to avoid jurisdictional conflict between the courts of different states in child custody matters, discourage protracted child custody controversies in the interest of promoting a stable environment for the child, deter child abductions, ensure that a particular custody dispute is decided in the state "with which the child and his family have the closest connection," and "[f]acilitate the enforcement of custody decrees of other states" here in New Jersey. N.J.S.A. 2A:34-29.
The focus of the UCCJA is thus on the relationship between the states. Significantly, a "state" is defined as "any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia." N.J.S.A. 2A:34-30j. Notable in its absence from this definition is any reference to a foreign country. Nevertheless, the UCCJA contains one provision dealing with international custody disputes. Specifically, N.J.S.A. 2A:34-51 provides:
The general policies of this act extend to the international area. The provisions of this act relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature and to custody rendered by appropriate authorities of other nations, if reasonable notice and opportunity to be heard were given to all affected persons.
[Ibid.]
*584 In a series of decisions, New Jersey courts have construed this section as conferring jurisdiction only where the court is asked to recognize and enforce a custody decree entered by the authorities of a foreign country. See Schmidt v. Schmidt, 227 N.J. Super. 528, 533, 548 A.2d 195 (App.Div. 1988); Loos v. Manuel, 278 N.J. Super. 607, 621, 651 A.2d 1077 (Ch.Div. 1994); Roszkowski v. Roszkowska, 274 N.J. Super. 620, 629, 644 A.2d 1150 (Ch.Div. 1993). The Chancery Division's decision in Ali v. Ali, 279 N.J. Super. 154 (Ch.Div. 1994), is not to the contrary. That case also involved a party's attempt to enforce a custody decree entered in a foreign territory. Id. at 158. To the extent that the Ali decision can be read as asserting original jurisdiction over a custody dispute involving a child residing in another country, it is plainly inconsistent with Justice (then Judge) Coleman's opinion in Schmidt v. Schmidt, 227 N.J. Super. 528, 548 A.2d 195, that "[t]he UCCJA only applies to an international child custody case when the State is asked to recognize and enforce decrees of foreign countries." Id. at 533, 548 A.2d 195.
Schmidt and its progeny distinguish between the exercise of original jurisdiction in a child custody dispute and the enforcement of foreign decrees. This distinction permeates the UCCJA. Our Supreme Court commented upon the distinction in Neger v. Neger, 93 N.J. 15, 459 A.2d 628. There, the Court noted that "[t]wo main threads run through the [UCCJA]." Id. at 25, 459 A.2d 628. "The first bears upon when a state should exercise original jurisdiction in a custody proceeding, that is, when no other state is in the midst of custody proceedings or has made a custody award after such proceedings." Ibid. "The second significant statutory strand relates to enforcement and modification of a custody decree of another state." Id. at 27, 459 A.2d 628.
Legal commentators have also discussed this distinction. See, e.g., Brigitte M. Bodenheimer, The Rights of Children and the Crisis in Custody Litigation: Modification of Custody In and Out of State, 46 U.Colo.L.Rev. 495, 501 (1975); Julia R. Rutherford, Note, Removing the Tactical Advantages of International *585 Parental Child Abductions Under the 1980 Hague Convention on the Civil Aspects of International Child Abduction, 8 Ariz.J.Int'l & Comp.Law 149, 152 (1991). This limitation has been described in the following terms:
while the UCCJA is reciprocal among those states and territories of the United States which have enacted it; it is not reciprocal between the United States and any other country. While Section 23 of the UCCJA makes it applicable to the international arena, the UCCJA does not contain language providing for judicial reciprocity. Thus, the UCCJA only recognizes and enforces foreign and domestic custody decrees within the United States and its territories. A state court in the United States, under the UCCJA, may enforce custody or visitation rights ordered by a foreign court against a United States citizen but it cannot order a citizen of another country to return a child to the United States.... In international child custody disputes, United States courts should favor ICARA [International Child Abduction Remedies Act, 42 U.S.C.A. §§ 11601-11610] over the UCCJA.
[Rutherford, Note, Removing the Tactical Advantages of International Parental Child Abductions Under the 1980 Hague Convention on the Civil Aspects of International Child Abduction, 8 Ariz.J.Int'l & Comp.Law at 152.]
We do not suggest that this view is universal. Our examination of the decisions of other jurisdictions discloses that the issue has received uneven treatment. Compare In re Stephanie M., 7 Cal.4th 295, 27 Cal. Rptr.2d 595, 867 P.2d 706, cert. denied sub nom. Jose M. v. San Diego Cnty. Dep't of Social Servs., ___ U.S. ___, 115 S.Ct. 277, 130 L.Ed.2d 194, and cert. denied sub nom. Mendez v. San Diego Cnty. Dep't of Social Servs., ___ U.S. ___, 115 S.Ct. 337, 130 L.Ed.2d 294 (1994); Zenide v. Superior Court, 22 Cal. App.4th 1287, 27 Cal. Rptr.2d 703 (1994); Ruppen v. Ruppen, 614 N.E.2d 577, 582 (Ind. App. 1993); Dincer v. Dincer, 666 A.2d 281, 284 (Pa.Super. 1995); Black v. Black, 441 Pa.Super. 358, 657 A.2d 964, app. denied, 668 A.2d 1119 (Pa. 1995) (applying UCCJA to international child custody disputes and construing the definition of "State" to encompass foreign nations) with Koons v. Koons, 161 Misc.2d 842, 615 N.Y.S.2d 563, 567 (Sup. 1994); Klien v. Klien, 141 Misc.2d 174, 533 N.Y.S.2d 211, 214 (Sup. 1988) (holding that UCCJA applies to international disputes but that foreign countries are not "states" for purposes of the statute). We perceive no need to revisit the area in the context of the facts *586 presented here. We adhere to our opinion in Schmidt v. Schmidt, 227 N.J. Super. 528, 548 A.2d 195. The UCCJA is thus inapplicable because this case involves the assertion of original jurisdiction over a custody dispute involving a child who resides in a foreign country.
We have examined other New Jersey statutes as well. N.J.S.A. 2A:34-23 authorizes the Family Part to resolve questions relating to alimony, maintenance and the "care, custody, education and maintenance of ... children." We do not construe this general grant of power as conferring original jurisdiction in international custody disputes. But see Macek v. Friedman, 240 N.J. Super. 614, 618, 573 A.2d 996 (App.Div. 1990). To do so would render nugatory most of the provisions of the UCCJA. We are convinced that N.J.S.A. 2A:34-23 simply authorizes the courts to enter various orders in matrimonial actions where subject matter jurisdiction otherwise exists.
We are also satisfied that N.J.S.A. 9:2-2 does not confer jurisdiction. This statute prohibits the removal of children of divorced or separated parents from New Jersey without the consent of both parents unless by court order. See Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988); Cooper v. Cooper, 99 N.J. 42, 491 A.2d 606 (1984); Cerminara v. Cerminara, 286 N.J. Super. 448, 669 A.2d 837 (App.Div. 1996). As noted above, plaintiff effectively consented to the removal of Lina from New Jersey under the separation agreement, and, in any event, this section is inapplicable because it covers only children who are "natives of this State, or have resided five years within its limits...." N.J.S.A. 9:2-2.

B. Federal Statutes

The Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention) was ratified by the United States on April 29, 1988. Later that same year, Congress passed the International Child Abduction Remedies Act (ICARA), 42 U.S.C.A. §§ 11601 to 11610, which provided a set of procedures designed to implement the treaty. See generally Duquette v. *587 Tahan, 252 N.J. Super. 554, 556, 600 A.2d 472 (App.Div. 1991). The ICARA confers concurrent jurisdiction of all "actions arising under the Convention" on the federal district courts and the courts of the states. 42 U.S.C.A. § 11603(a). Four jurisdictional requisites must be satisfied to invoke the Hague Convention. First, the nations involved must be signatories to the Hague Convention. Roszkowski v. Roszkowska, 274 N.J. Super. at 633, 644 A.2d 1150. Second, "the party petitioning the court must demonstrate that the child involved was `habitually resident in a Contracting State [i.e., one which is a signatory to the Convention] immediately before any breach of custody....'" Ibid. (quoting Hague Convention art. 4). Third, the child must be under the age of sixteen. Id. at 634, 644 A.2d 1150 (citing Hague Convention art. 4). Fourth, the removal to or retention of the child in a country other than the child's habitual residence must have been wrongful. Id. at 635, 644 A.2d 1150 (citing Hague Convention art. 3).
Plaintiff has failed to meet the first, second, and fourth requirements for invocation of the Hague Convention. First, Morocco is not a signatory to the Convention. Second, plaintiff did not have custody rights in the child prior to her removal from the United States, but merely visitation rights. "[T]he Convention does not mandate the return of children to the noncustodial parent for the purpose of visitation." Viragh v. Foldes, 415 Mass. 96, 612 N.E.2d 241, 246 (1993). Although plaintiff and defendant have joint legal custody under the separation agreement, the right to custody as contemplated by the Convention consists of "`in particular, the right to determine the child's place of residence.'" Ibid. (quoting Hague Convention art. 5(a)). Any fair reading of the separation agreement reveals that plaintiff does not have that right. All he has under the agreement is a "right of access" to the child. See Hague Convention art. 5(b) (a complete copy of the Convention is available as an appendix to this court's decision in Duquette v. Tahan, 252 N.J. Super. at 563-79, 600 A.2d 472). Breach of such a right does not trigger an automatic duty under *588 the Convention to return the child. Finally, as noted, there is no evidence in the record to support a finding that Lina was wrongfully removed from the United States.
We have also reviewed the Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A (PKPA). The PKPA provides that the courts of each state are required to enforce child custody decrees entered by any sister state. 28 U.S.C.A. § 1738A(a). The federal statute is inapplicable because it concerns only the enforcement in one state of decrees previously entered by the courts of another state. Moreover, there is nothing in the language or history of the PKPA suggestive of a congressional intent to apply the statute to decrees issued by foreign governments.

C.
We thus conclude that the Family Part lacked subject matter jurisdiction in this case. In reaching this conclusion, we nevertheless emphasize the limited contours of our holding. We stress that there is no evidence in this case indicating the child was kidnapped or otherwise wrongfully removed from New Jersey to a foreign country. New Jersey has long exercised parens patriae jurisdiction to protect the safety and welfare of children having substantial contacts with this State. See Fantony v. Fantony, 21 N.J. 525, 535-36, 122 A.2d 593 (1956); Lippincott v. Lippincott, 97 N.J. Eq. 517, 519-21, 128 A. 254 (E. & A. 1925); Clemens v. Clemens, 20 N.J. Super. 383, 389-90, 90 A.2d 72 (App.Div. 1952); Lavigne v. Family and Children's Soc'y, 18 N.J. Super. 559, 575-76, 87 A.2d 739 (App.Div. 1952), rev'd on other grounds, 11 N.J. 473, 95 A.2d 6 (1953). This inherent jurisdiction is not dependent upon statutory grants. Clemens v. Clemens, 20 N.J. Super. at 389, 90 A.2d 72. Indeed, there is authority for the proposition that the inherent jurisdiction of the courts to protect children residing or having a substantial connection with New Jersey is more extensive than the grants conferred by statute. Hachez v. Hachez, 124 N.J. Eq. 442, 446, 1 A.2d 845 (E. & A. 1938); Clemens v. Clemens, 20 N.J. Super. at 389-90, 90 A.2d 72. We *589 have no occasion to determine whether our inherent jurisdiction might be implicated in other circumstances.

IV.
Even were we to find that the Family Part had subject matter jurisdiction, the result would not be different. In our view, the court would have been obliged to abstain and defer to the jurisdiction of the Moroccan court under recognized principles of international comity. Comity "`is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will upon the other.'" O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A., 830 F.2d 449, 451 n. 3 (2d Cir.1987) (quoting Hilton v. Guyot, 159 U.S. 113, 163-64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895)), cert. denied, 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988). It is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard to the rights of its own citizens or of other persons falling within its protection. Ibid. In other contexts, it has been said that "a court may abstain from [asserting] jurisdiction when the extraterritorial effect of a particular remedy is so disproportionate to harm within the United States as to offend principles of comity." Consolidated Gold Fields, PLC v. Minorco, S.A., 871 F.2d 252, 263 (2d Cir.), cert. dismissed, 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989); see also Virgin Atlantic Airways v. British Airways, 872 F. Supp. 52, 60-61 (S.D.N.Y. 1994).
Nothing has been presented to the Family Part or this court indicating that the question of custody cannot be fairly resolved by the courts of Morocco. The record is devoid of evidence suggesting in any way that the best interests of the child will not be protected. Under these circumstances, we believe that the Family Part should have abstained even assuming that it had subject matter jurisdiction.
Reversed.