259 N.J. Super. 328 (1992)
613 A.2d 486
FRED TAHAN, PLAINTIFF-APPELLANT,
v.
MICHELLE DUQUETTE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1992.
Decided September 18, 1992.
*331 Before Judges PRESSLER, R.S. COHEN and KESTIN.
Carol Oswald argued the cause for appellant (Teich, Groh and Frost, attorneys; Carol Oswald on the brief).
John T. Kubit argued the cause for respondent.
The opinion of the court was delivered by KESTIN, J.A.D.
*332 In a prior appeal in this matter, Duquette v. Tahan, 252 N.J. Super. 554, 600 A.2d 472 (App.Div. 1991), we held that the Convention on the Civil Aspects of International Child Abduction, adopted at The Hague on October 25, 1980 (the Convention), was effective in the United States as a treaty and applied to the parties. The case was remanded for a limited purpose: "to determine the applicability of the exceptions contained in Article 13b, particularly the second paragraph of that subarticle." Id. at 563, 600 A.2d 472.
The Convention requires the return of a child to the place in which the child habitually resided immediately before a wrongful removal or retention. We determined that the plaintiff, Fred Tahan, was obliged under the terms of the Convention and the statute implementing it, 42 U.S.C.A. § 11601 et seq., to return the child to the defendant, Michelle Duquette, in the Province of Quebec. Under the Convention, the merits of a custody dispute are to be decided in the place of habitual residence by a tribunal with subject matter jurisdiction.
Article 13 of the Convention, however, excuses the duty to return under specified circumstances. One of these, set out in subparagraph b, is "a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." In remanding, it was our expectation that this issue would be resolved promptly and that the situation of the parties would, juridically at least, be quickly stabilized. The record discloses, instead, that the single, limited issue on remand was not addressed until more than seven months had expired.
On June 24, 1992, the proceeding opened with the court's request for an offer of proof from the plaintiff. Counsel responded that plaintiff would rely upon the testimony of four witnesses. A court-appointed clinical psychologist who had prepared a psychological and bonding evaluation of the parties and the child would testify concerning the subject matter of his *333 report. The plaintiff himself and his present wife would also testify, addressing the child's "dreams and his desires, his nightmares and fears", as well as his family relationships. The fourth person the plaintiff proposed to call was the child's teacher during the preceding school year "who has probably spent more time with [the child] in the last nine months than anyone other than his father, his step-mother and his baby sister." The purpose of all the foregoing testimony, according to counsel, was to give the court an opportunity "to consider how this child will be affected by the decision today.... We have to look at the psychological harm that [the child] will suffer...." Counsel noted that the motivations of the parties would be explored, and concluded: "the clear and convincing evidence ... will show that there is a grave risk of psychological harm to [the child] if this court disrupts his life now by compelling his return to Canada."
After hearing the response of defense counsel, the trial court ruled that the Article 13b inquiry, concerning physical or psychological harm or otherwise placing the child in an intolerable situation, was not intended to cover factual matter which was subject to being considered in a plenary custody hearing. To do so, the trial judge opined, would be to usurp jurisdictional prerogatives reserved by the Convention to the courts of Quebec. The court ruled, accordingly, that the proffered testimony would not be heard. The trial court went on to describe the Article 13b inquiry as being limited to the question whether there exists in the place of habitual residence such "internal strife" or unrest as to place the child at risk. The trial judge explained that, in his view, the focus of the Article 13b inquiry was exclusively upon the jurisdiction involved and not upon the individuals.
The court ordered the child to be turned over to the defendant for return to Canada two days later. The trial court denied a stay pending appeal. The next day, we stayed the order pending appeal and subsequently denied defendant's motion to vacate the stay. We now affirm the ruling of the trial *334 court and vacate the stay. The trial court shall, within ten days, enter an appropriate order establishing the details concerning the early return of the child to the defendant.
We agree with the trial judge that the Article 13b inquiry was not intended to deal with issues or factual questions which are appropriate for consideration in a plenary custody proceeding. Psychological profiles, detailed evaluations of parental fitness, evidence concerning lifestyle and the nature and quality of relationships all bear upon the ultimate issue. The Convention reserves these considerations to the appropriate tribunal in the place of habitual residence, here Canada, specifically Quebec. No court on a petition for return should intrude upon a foreign tribunal's subject matter jurisdiction by addressing such issues.
Nevertheless, it is clear that Article 13b requires more than a cursory evaluation of the home jurisdiction's civil stability and the availability there of a tribunal to hear the custody complaint. If that were all that were required, the drafters of the Convention could have found a clear, more direct way of saying so.
Although we are not bound by the decisions of courts in other states or by the manner in which a treaty has been interpreted in other nations, Ex parte Charlton, 185 F. 880, 886 (D.N.J. 1911), aff'd 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913), a proper regard for promoting uniformity of approach in addressing a treaty of this kind requires that the views of other courts receive respectful attention. We are satisfied from our review of cases from various American and foreign jurisdictions cited by the parties that this precise issue has not been squarely addressed in an authoritative manner. We are satisfied further that the view we express on this question comports with conceptual principals embodied in the Convention which have informed the decisions of other courts in interpreting and applying the Convention.
*335 To hold, as the trial court did, that the proper scope of inquiry precludes any focus on the people involved is, in our view, too narrow and mechanical. Without engaging in an exploration of psychological make-ups, ultimate determinations of parenting qualities, or the impact of life experiences, a court in the petitioned jurisdiction, in order to determine whether a realistic basis exists for apprehensions concerning the child's physical safety or mental well-being, must be empowered to evaluate the surroundings to which the child is to be sent and the basic personal qualities of those located there. The last paragraph of Article 13 says as much:
In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.
Here, however, the plaintiff indicated no intention to address the surroundings and those located there in his proofs. Every element of his proffer went to issues which, under the Convention, may only be addressed in a plenary custody proceeding in Quebec.
The failure of the trial judge to interview the child was not plain error. R. 2:10-2. To the contrary, an interview with the judge, under the circumstances before the court, could not have served a useful purpose. Article 13 of the Convention excuses the duty to return if a child of appropriate age and maturity objects. This standard simply does not apply to a nine-year old child.[1]
An issue of counsel fee entitlement pursuant to 42 U.S.C.A. § 11606(b) has been raised before us prematurely. *336 No motion for counsel fees on the appeal, appropriately supported, is presently before us. R. 2:11-4. Counsel fee applications for proceedings in the trial court are to be made, in the first instance, to the trial court. R. 4:42-9(a)(1).
The parties have finally concluded this phase of their legal dispute over custody and related issues. They may or may not embark upon yet another phase in Quebec. But the underlying problems have not been resolved. We urge the parties to understand that courts in any jurisdiction are poor places to resolve such fundamental relational problems as child custody. Rules of law and procedural strictures are no substitute for personal choice in so intensely personal an issue. Parents who have divorced are frequently unable to communicate constructively on issues of importance; so they look to the legal system to resolve their problems. But no stranger in a judicial robe, however able and well motivated he or she may be, is equipped to make a decision as valid as the parents working together might make.
Both Mr. Tahan and Ms. Duquette must come to understand that security, peace of mind and stability are every child's right. Their inability to deal constructively with each other deprives their son of his due, which is within their power to give. Professed love is no substitute where it results in turmoil and uncertainty for the child who is pulled in opposite directions by his parents. This child will receive what he desperately needs in this regard only if both parties are genuinely prepared to subordinate their individual needs to the best interests of the child and begin to communicate with each other solely for the benefit of the child. We urge the parties to make an effort to resolve this matter between themselves with professional assistance. Otherwise, there is a substantial risk that they will doom their child to a future of conflict, sadness and certain psychological harm.
Affirmed. We remand to the trial court for entry of such orders as are necessary to effectuate this decision. We do not retain jurisdiction.
NOTES
[1] Plaintiff has moved to supplement the record with a certification of the court-appointed psychologist who evaluated the parties and the child. The certification endeavors to establish that this nine-year old child possesses the requisite maturity to lodge an effective objection to his return to Canada. The motion to supplement the record is granted. After carefully reviewing the certification submitted, we have determined that the material offered does not establish the proposition which it seeks to advance.