278 N.J. Super. 607 (1994)
651 A.2d 1077
KLAUS LOOS AND UTE LOOS, PLAINTIFFS,
v.
JOY MANUEL, JOACHIM GROSS, AND CAROLINE GROSS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Family Part, Union County.
Decided May 6, 1994.
*609 Carl Louis Peer, for petitioners.
Joachim Gross and Caroline Gross, respondents, Pro Se.
No appearance for respondent Joy Manuel.
ALLEY, J.S.C.

I. INTRODUCTION:

Petitioners seek relief under the 1980 Hague Convention on the Civil Aspects of International Child Abduction (the Convention) and the implementing statute, the International Child Abduction Remedies Act (ICARA), 42 U.S.C. §§ 11601 to 11610. Petitioners are German citizens residing in Neustadt, Germany. They invoke the Convention seeking to have this court direct the return to *610 them of Thomas Joachim Manuel. Thomas is not quite six, having been born June 24, 1988.[1]

II. FACTS:

Unlike many proceedings under the Convention, this case is not between contending parents. Thomas' mother, Joy Manuel, has not been served and has not participated in this proceeding. All other parties have stipulated that despite bona fide efforts, they have been unable to locate her, although they believe she is now in Germany.[2] There is no indication that Thomas' father is a factor in his life, nor is the father a party to this proceeding.
The respondents (in addition to Joy Manuel) are Caroline Gross, who is Joy Manuel's natural mother (and thus is obviously also Thomas' grandmother), together with Gross' husband, Joachim. Thomas has been living with the Grosses at their home in Union, New Jersey, since Easter Sunday, April 3, 1994. Petitioner Ute Loos is not a blood relative of Thomas. Her connection with Thomas is through her brother, Bernd Karkosch. Karkosch, through a liaison with Thomas' mother, fathered the second child of Joy Manuel, a daughter named Kjhara, born June 18, 1991. Petitioner Klaus Loos is the husband of Ute Loos. Ute Loos is a housewife and Klaus Loos is a taxi driver. Caroline Gross is a *611 bookkeeper doing accounting work for a company and Joachim Gross is a self-employed dealer in antiques and collectibles.
Thomas' odyssey has taken him through five years of life in Germany and has brought him from Germany to the United States. Petitioners want the odyssey to continue. They assert that under the Convention he should be returned to them in Germany and that they can provide good care and a stable home for him there. The Grosses want to keep Thomas living with them in New Jersey. A few words about Thomas' background are in order.
In mid-1988, Thomas' mother, Joy Manuel moved in with Karkosch as part of the relationship from which Kjhara Manuel was born. They resided in the same apartment building as the Looses, but in a different apartment unit. Joy Manuel moved out of that house, apparently taking Thomas with her for at least a brief period, after her relationship with Karkosch ended in 1992. Petitioners claim that in February 1992 Thomas began staying in their home in Neustadt during the daytime, and that he lived with them beginning in October 1992. In late October 1993, when Thomas was residing with petitioners, she took the children for what she said would be a visit, but instead she left Germany for New Jersey, taking Thomas and Kjhara with her.
Manuel and the children lived in New Jersey with the Grosses off and on from November 1993 until January 1994. She had Thomas admitted to the children's psychiatric ward of Elizabeth General Hospital for twenty-eight days, beginning just after Christmas 1993. After that, she left with the two young children to stay at the home of Carol McMillan, her grandmother (who is also Caroline Gross' mother and Thomas' great-grandmother) in Milford, Pennsylvania.
On Easter Sunday 1994, the Grosses drove to Pennsylvania because they had just learned that Manuel had recently departed with Kjhara for an unannounced destination, leaving Thomas behind in Pennsylvania. Since Caroline Gross' mother was unable to care for Thomas, the Grosses brought him back to their home *612 in Union, New Jersey, where he has since resided. The Grosses are in their mid-forties, and they speak fluent German, as does Thomas. In fact, Joachim Gross is a native of Germany. He and his wife desire to provide a stable home and loving environment for Thomas in New Jersey. They have enrolled him in the pre-kindergarten program of Hamilton School in Union.

III. DISCUSSION:

As will be seen, in proceedings under the Convention, the court's role is not to make traditional child custody decisions. It is to determine in what jurisdiction the child should be physically located, so that the proper jurisdiction can make custody decisions.
The Convention was prepared under the auspices of the Hague Conference on Private International Law, which for more than one hundred years has sought to promote the harmonization of private international law through activities that include preparing international treaties and monitoring their operation. The Convention was adopted by a number of nations on October 6, 1980, although the United States and the Federal Republic of Germany did not accede to it until July 1, 1988 and December 1, 1990, respectively.[3]
*613 The Convention was prepared against a backdrop of increasing concern over international child abduction. Its operation is limited to children under sixteen, and its stated objects are:
(a) [T]o secure the prompt return of children wrongfully removed to or retained in any Contracting State [i.e., nation]; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.... (art. 1).
As a treaty made "under the Authority of the United States," it is binding on "the Judges in every State" as part of "the supreme Law of the Land" pursuant to the supremacy clause, U.S. Const., art. VI, cl. 2. (as noted in Duquette v. Tahan, 252 N.J. Super. 554, 562, 600 A.2d 472 (App.Div. 1991); further proceedings following remand reported under Tahan v. Duquette, 259 N.J.Super 328, 613 A.2d 486 (App.Div. 1992)).
A focal point of the Convention is the concept of the habitual residence of the child. It is immaterial in this case that the term lacks some precision, because it is beyond legitimate dispute that Thomas was habitually resident in Germany from his birth until his removal to this country in October 1993, soon after his fifth birthday. When a child has been wrongfully removed from the place of his habitual residence and less than one year has elapsed from the removal, the court must "order the return of the child forthwith" (art. 12) (with exceptions that are not relevant here).[4]
Article 3 provides in relevant part:
"The removal or the retention of the child is to be considered wrongful where 

*614 (a) it is in breach of rights of custody attributed to a person ... under the law of the State [nation] in which the child was habitually resident immediately before the removal or retention; and
(b) at the time of removal or retention those rights were actually exercised, either jointly or alone. .. ."
Here, petitioners seek the return of a five-year old child who was taken from Germany, another contracting state, where he was habitually resident until his removal less than a year ago. There is no question that if Thomas' removal (or his subsequent retention in the United States) was "in breach of rights of custody" of petitioners under German law (art. 3), he should be returned "forthwith" to them in Germany (art. 12), because the criteria of habitual residence, the age of the child, and the period of removal of less than one year have been satisfied beyond argument.
The core issues on which this decision must turn, then, are whether under German law petitioners had "rights of custody" concerning Thomas and, if so, whether those rights were breached by his removal or retention.
Petitioners claim that their rights of custody arise because Thomas is their "official foster child" (Petition, par. 10). At the initial hearing on April 12, 1994, they established that they were foster parents of Thomas pursuant to a February 1, 1993, certificate of the "Jugendamt" (Youth Welfare Office)[5] of the City of Neustadt. The certificate stated that Thomas had lived with petitioners since October 30, 1992, and that he was a foster child ("pflegekind") in their household. It did not state that they had any authority as foster parents to control custody of Thomas.
The Convention has eased the ability of parties to prove foreign law, but the nature and extent, if any, of petitioners' rights of custody under German law were not made fully clear at the initial *615 hearing on April 13, 1994. For this reason the proceeding was continued until May 2, 1994, so as to afford all parties the opportunity to obtain and forward to the court further information on that issue.
ICARA has enacted specific provisions placing on petitioners in Convention cases the burden of proof on the issue of whether a removal is wrongful (i.e., whether it was in breach of rights of custody (42 U.S.C. § 11603(e)). It is unquestioned here that the persons asserting rights of custody must establish both that they have such rights, and that those rights were breached by the removal or retention of the children.
Article 5 of the Convention defines "rights of custody" as including "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence...." The rights of custody referred to in the Convention can be held either by a person, an institution, or any other body, either jointly or alone (art. 3).
Based upon the submissions from petitioners concerning their alleged rights of custody under German law, which had been received immediately prior to the final date of the hearing on May 2, 1994, it was not at all clear that petitioners had any rights of custody which would entitle them to demand the return of the child pursuant to the Convention. At the final hearing on May 2, 1994, the parties presented additional documents constituting their further submissions as to German law. Specifically, petitioners submitted an additional certification of Marci Scott, which attached a telefax letter to petitioner's counsel dated on the date of the final hearing (May 2, 1994) from Judge Wilhelm, a Judge of the local District Court ("Amtsgericht") in Neustadt, together with a copy of paragraph 38 of the German Social Law Book (the originals are in German and Scott furnished translations of the originals with her certification) (Court Exhibit 1).
Petitioners further submitted a series of correspondence between their attorney and the Central Authority of the Federal *616 Republic of Germany (which administers the Convention through the office of the Public Prosecutor General of the Federal Court of Justice) ("Der Generalbundesanwalt beim Bundesgerichtshof"). (Court Exhibit 3). Also at the final hearing, the Grosses handed up letters to them from the Neustadt Youth Welfare Office ("Jugendamt") dated April 14, 1994 and April 25, 1994 (German originals with translations by Joachim Gross), and a letter from the Hamilton School (one of the Township of Union's public schools) confirming Thomas' enrollment in the pre-kindergarten program there five mornings a week (Court Exhibit 2).
Citing the letter from Judge Wilhelm of the District Court in Neustadt, petitioners relied on paragraph 38 of the German Social Law Book, and they also relied on paragraph 33. Petitioners further relied at the hearing on Section 1666 of the German Civil Procedure Code (as set forth both in the Code and its Supplement), and also on Section 1632(4) (Supplement) of that Code.[6]
Petitioners conceded at the hearing that they do not have sole rights of custody and that at most they have joint rights of custody. Additionally, in their letter-brief dated April 26, 1994, petitioners stated that "the rights relating to the care of Thomas is in a combination of three persons, the Youth Welfare Office in Neustadt, and/or the Looses and/or Joy Manuel" (page 3). They also acknowledged that Joy Manuel, the mother of Thomas, at relevant times had had the passports and birth certificates of both children, including at the time she took Thomas from them, and that those documents were not and had not been possessed by them.
*617 It appears uncontested by the parties that the appropriate German Court is the Guardianship Court ("Vormundschaftsgericht"), which is a part of the District Court ("Amtsgericht"), and is the German judicial system's general counterpart in custody matters to the Family Part of the Superior Court of New Jersey. The Guardianship Court had the jurisdiction and power to appoint an official guardian or custodian of the children as long as they were in Germany. Petitioners further acknowledged, however, that they have never been declared custodians or guardians of Thomas by the German Guardianship Court. Indeed, they conceded that they had applied for that relief, but withdrew the application at the request of the German Court on January 26, 1994, because that court indicated to them that it had no further authority over Thomas inasmuch as he was no longer located in Germany. And in a letter to the Guardianship Court from the Youth Welfare Office dated January 14, 1994, that office stated that it "will have to decide about the custody rights," thus unmistakably showing that there had not yet been such a decision, notwithstanding that petitioners were relying on a certificate which that office had issued eleven months earlier.
Moreover, there was no claim that in the period since Easter 1994, when Thomas has been in the custody of the Grosses, respondent Joy Manuel, had asked that he be returned either to her or to petitioners. A candid revelation of petitioners' own views regarding their lack of custody rights appears from their actions in mid-1993. They desired to take Thomas and Kjhara to France to visit the Euro-Disney theme park near Paris. Before doing so they called Joy Manuel to ask her permission to take them, and they made the trip only after receiving her permission.
As indicated by Judge Wilhelm's May 2, 1994, letter to petitioners' counsel, under German law, "custodial rights" are reposed principally in the "natural mother." Judge Wilhelm further pointed out that the Youth Welfare Office has no authority other than to assist Manuel in obtaining child support money from Thomas' natural father. He summarized petitioners' status by stating, on *618 the basis of paragraph 38 of the Social Law Book, that the foster-parents are responsible for the child's daily needs.
One of the most significant indicators as to the status of petitioners' alleged rights of custody under German law is a letter from the German Central Authority to petitioners' counsel dated May 2, 1994, the same date as the final hearing. In that letter, Mrs. Becher of the German Central Authority responded to an inquiry by petitioners, and noted some sympathy with their views by stating that it is:
[D]ifficult to believe that under German law the foster parents, Mr. and Mrs. Loos, in this case have no legal responsibility for Thomas although he lived for almost one year in their home.
Mrs. Becher then acknowledged, however, that the position of the Central Authority which was being communicated to petitioners "will not be very helpful in securing the return of Thomas Manuel to Germany." She confirmed that in the exercise of its function under the Convention of providing "information of a general character as to the law of ... [Germany] in connection with the application of the Convention," the German Central Authority was "obliged to state the legal situation under German law as it is even if this situation may cause harm to the minor Thomas Manuel...." The letter also pointed out that the German Central Authority:
[C]annot confirm that the Youth Welfare Office shared custodial rights with Joy Manuel and delegated these rights to Mr. and Mrs. Loos. Neither the Youth Welfare Office nor Mr. and Mrs. Loos had any rights limiting the custody rights of Mrs. Manuel.
Moreover, the German Central Authority conceded that "the German courts may doubt whether they still have jurisdiction in this case as long as Thomas stays in the United States."
Additionally, in a telefax letter to petitioners' counsel dated April 26, 1994, Mrs. Bruckmann of the Neustadt Youth Welfare Office stated that although the foster relationship between Thomas and the Looses "was overseen by" that Office:
Mrs. Joy Manuel has sole custody of Thomas Manuel and can decide where he resides. Therefore, Mrs. Joy Manuel was legally permitted to remove Thomas out of his Fosterhome with the Loos family. Mr. and Mrs. Loos were responsible for *619 his needs through the duration of the foster relationship in place of Mrs. Manuel. The Loos family has no rights to the boy. (Emphasis added.)
It is compelling that the German Central Authority, in an April 15, 1994, letter to petitioners' counsel, confirmed its determination that "the prerequisites laid down by the Hague Convention are not satisfied," and indicated that when Thomas was placed in foster care with petitioners, this:
[T]ook place on a voluntary basis with the express consent of the mother. According to German law, therefore, there were no legal consequences of any kind for the foster parents as regards custody or the right to determine the place of residence. As a result, the behavior of the mother cannot be judged an unlawful abduction within the meaning of Article 3 of the Hague Convention. (Emphasis added.)
A further telefax letter from the Central Authority to petitioners' counsel, dated April 25, 1994, supplemented the April 15 letter and confirmed that "the fact that Joy Manuel abandoned Thomas in the United States has no influence upon the legal position of the foster parents Mr. and Mrs. Loos, as described in my letter of April 15, 1994." It further indicated that the person who would have the right to demand Thomas' return would be his natural mother (assuming she wished to do so), not the foster parents, the Looses, she "being the mother with full custody rights...."
At the final hearing, petitioners relied on Article 1632(4) of the German Civil Code to assert that they had the right to demand Thomas' return. The position of German Central Authority is to the contrary, however, and indicates that such an application should have been made before the children had been brought to the United States. (April 25, 1994 letter from Central Authority).[7]
In summary, the foregoing facts, and German law as presented to the court and as construed by the German Central Authority, the Youth Welfare Office, and the local German District Court, permit only one conclusion: the petitioners Klaus and Ute *620 Loos did not have rights of custody which have been breached by the removal of Thomas to the United States by his natural mother, or by his retention here by his grandparents after his abandonment by his mother. To be sure, petitioners, as foster parents in accordance with the February 1993 certificate issued by the Youth Welfare Office, were responsible under German law for Thomas' daily care as long as he was with them. But they did not have rights of custody, and the child's mother could remove Thomas from their care at any time, as she ultimately did. The Grosses did not remove Thomas from Germany, but his mother did.
Neither Manuel's removal of Thomas from the petitioners' home, her transportation of Thomas to the United States, her subsequent departure leaving the child with her grandmother, nor the continued residence of Thomas with the Grosses since Easter 1994, has constituted a wrongful removal or retention of Thomas in breach of any right of custody of petitioners under German law or the Convention. This result is compelled by German law. Petitioners have no right to demand Thomas' return to them in the Federal Republic of Germany under the Convention on the Civil Aspects of International Child Abduction in view of their lack of custody rights.[8]
The Convention is being acknowledged increasingly as a successful and laudable development in private international law. The court recognizes the importance of the Convention and its proper application. This result is reached simply because, under German law, petitioners do not have the right to demand Thomas' return. If German law had given them that right, the court would have readily enforced their rights, as it would have been incumbent upon the court to do under the Convention.
*621 Petitioners also invoke the international provisions of the Uniform Child Custody Jurisdiction Act (the Act), N.J.S.A. 2A:34-51, and the general equitable jurisdiction of the court. Having considered these arguments, the court finds that no different result should occur under the Act, especially since it is clear that no German court has rendered a custody decree as to Thomas. The existence of such an award is highly important, if not indispensable, to a claim under the Act's international provisions. Moreover, it would be contrary to the supremacy clause to supplant the Convention's provisions with general rules of equity. In any event, the court has noted good interaction in the courtroom between Thomas and the Grosses, and is concerned that further relocation would mean additional disruption for Thomas. Here, the equities favor maintaining the present status.
From all that appears in the record, both couples, the Looses and the Grosses, are motivated by the strong and noble desire to provide Thomas a stable and loving home. Genuine interest in the welfare of this child can only be welcomed by the court. Even though the result of this decision is to leave Thomas at this time in the care of his grandparents, the Grosses, the court is cognizant that hereafter others may seek to assert that in the best interests of Thomas, he should come under their care and be taken from his grandparents. The net result of this decision is simply to leave the parties where they are for now, without prejudice to the merits of any issues regarding the custody of Thomas which may be asserted in this court or any other appropriate forum.
Accordingly, the relief sought in the petition is denied in all respects, and the petition is dismissed with prejudice pursuant to an order which this court has entered today to implement its decision as expressed in this opinion.
NOTES
[1] Pursuant to ICARA, petitioners filed an application dated March 28, 1994, with the United States Department of State, which acts as this country's Central Authority for purposes of Article 11 of the Convention. By letter of April 15, 1994, the Department of State communicated with the court to apprise the court of petitioners' request for assistance and to ask for expeditious consideration. It further stated: "This letter should not be construed by the court as constituting an opinion of the United States or of the Department of State regarding the merits of the case."
[2] The court is aware that in the event of a litigated custody dispute centered on the best interests of the child, a number of issues as to the quality of Ms. Manuel's parenting might be asserted. She has not appeared in this proceeding, however, and thus has not been heard as to those allegations. In any event, they largely would be beyond the scope of this proceeding, so it would be inappropriate to comment in this opinion on her suitability as a parent.
[3] Information concerning the role of the Hague Conference, and the present state of the law under the Convention, is set for the in the following contributions published in an issue of Law and Contemporary Problems that is devoted to an October 1992 conference that marked the centennial year of the Hague Conference: Paul D. Carrington and Adair Dyer, Jr., the Hague Conference on Private International Law: Foreword, 57 LAW & CONTEMP. PROBS. 1 (1994); Georges A.L. Droz, A Comment on the Role of the Hague Conference on Private International Law, id., at 3; and Linda Silberman, Hague International Child Abduction Convention: A Progress Report, id., at 210. The increasing body of literature concerning the Convention also includes, e.g., Linda Silberman, Hague Convention on International Child Abduction: A Brief Overview and Case Law Analysis, 28 FAM. L.Q. 9 (1994); Adair Dyer, The Hague Convention on the Civil Aspects of International Child Abduction  Towards Global Cooperation, 1 INT'L. J. CHILDREN'S RIGHTS 273 (1993); Peter Pfund, The Hague Convention on International Child Abduction, The International Child Abduction Remedies Act, and the Need for Availability of Counsel for All Petitioners, 24 FAM. L.Q. 35 (1990). The operation of the Convention is periodically monitored by the Hague Conference in meetings held at The Hague that are attended by representatives of nations that are parties to the Convention. The most recent meeting was held in January 1993 and is summarized in the Report of the Second Special Commission Meeting to Review the Operation of the Hague Convention on the Civil Aspects of International Child Abduction. (The court's review of the Report, however, revealed nothing that is especially pertinent to the principal issues raised by petitioners' claim.)
[4] The exceptions in Article 13 of the Convention to the duty to return the child "forthwith" (e.g., the return would "place the child in an intolerable situation", see, e.g., Tahan v. Duquette, supra) have not been invoked here.
[5] The English translation of the German terms and documents in this opinion are unofficial translations which have been supplied by the parties and whose accuracy has not been materially disputed. The English versions of the German statutes cited in the opinion or otherwise reviewed by the court in this proceeding have been supplied by petitioners' counsel and were not disputed as to the accuracy of their translation.
[6] Petitioners had submitted a number of other German statutes to the court for its review prior to the final hearing. Petitioners did not rely, at least to any substantial extent, on those other statutes in their final articulation of their position on May 2, 1994, however. In any event, based on the court's careful review of those other provisions, it finds that they do not support a construction of German law concerning petitioners' rights that is inconsistent with the construction set forth in this opinion.
[7] Concededly, it would have been almost impossible as a practical matter for petitioners to have done so, because Joy Manuel apparently took her children from petitioners' care without notifying them that she would not return them.
[8] The Court commends petitioners' counsel for his able and candid presentation to the Court. The result reached in this opinion is simply the consequence of petitioners' lack of certain rights under German law, and is not at all due to a failing of their very able attorney. The wisdom of the existing provisions of German law on this issue is not appropriate for this Court to examine.