## In re PETITION FOR WRIT OF HABEAS CORPUS FOR COFFIELD.

[Cite as *In re Petition for Writ of Habeas Corpus for Coffield* (1994), 96 Ohio App.3d 52.]

Court of Appeals of Ohio,
Portage County.

No. 94–P–0034.

Decided June 3, 1994.

*James R. Ranftl,* for appellant.

*Paula C. Giulitto,* for appellee.

*Christine D. Finan,* guardian *ad litem.*

*Per Curiam.*

This appeal has been taken from a final judgment of the Juvenile Division of the Portage County Court of Common Pleas. Following the filing of the notice of appeal, the parties to this appeal expressly agreed to waive the time requirements under the Ohio Rules of Appellate Procedure governing the filing of the record and the appellate briefs. This waiver was made in recognition of the unique nature of the appeal's subject matter and the need for a speedy resolution of the underlying dispute between the parties. Consistent with this waiver, our discussion of the appeal's merits will follow this court's accelerated opinion format, pursuant to Loc.App.R. IV.

On March 31, 1994, appellee, Yvonne Keen, initiated the instant action by filing a petition for a writ of habeas corpus with the trial court. In this petition, appellee sought an order requiring appellant, John Coffield, to return possession and control of their minor child, Ryan Russell Keen Coffield, to her. As grounds for this request, appellee alleged that appellant had "wrongfully" taken Ryan from the country of her residency, Australia, and had brought him to the United States, in violation of a temporary custody order of an Australian court. Appellee's petition was brought under the International Child Abduction Remedies Act,

Section 11601 *et seq.*, Title 42, U.S.Code, and the Hague Convention on the Civil Aspects of International Child Abduction.

After appellant had received proper notice of the petition, an abbreviated bench trial was held on April 20, 1994. Based upon evidence presented by the parties, the trial court made the following findings in its judgment: (1) that Australia had been Ryan's habitual residence prior to his removal; (2) that appellant had violated appellee's custody rights under Australian law by taking Ryan from Australia without her consent; (3) that Ryan had not become "settled" in his new "environment" in Portage County, Ohio; and (4) that Ryan would not be subject to a grave risk of physical or psychological harm, or otherwise be placed in an intolerable situation, by returning to Australia with appellee.

Based upon these findings, the court concluded that appellee was entitled to take custody of Ryan and then take him back to Australia; accordingly, the court ordered the Portage County Department of Human Services to release Ryan to appellee.

In appealing from this judgment, appellant has raised four assignments of error for review. Under the first assignment, appellant contends that the trial court erred in denying his pretrial motion for psychological testing of himself, appellee, and Ryan. Appellant argues that the results of this testing should have been admissible because they would have been relevant to the factual issue of whether Ryan will suffer psychological harm by returning to Australia and living with appellee.

As was noted above, appellee's petition was brought under the International Child Abduction Remedies Act and the Hague Convention on the Civil Aspects of International Child Abduction. Section 4(b) of the former statute provides that in seeking the return of an abducted child who is being "wrongfully" held in the United States, any person can initiate a judicial proceeding in any court of competent jurisdiction. Section 4(d) then states that the issues raised in this proceeding shall be determined in accordance with the standards set forth in the Hague Convention. Section 11603, Title 42, U.S.Code.

Article 3 of the latter document states that a child has been wrongfully removed from the country of his habitual residence if the removal violated the custody rights of a person under the laws of that country. Article 12 then provides that upon determining that a wrongful removal has occurred, a court of competent jurisdiction must immediately order the return of the child if a period of less than one year has elapsed since the abduction. This article further provides that if a period of more than one year has elapsed, the court must order the return of the child, unless the abductor shows that the child has become "settled" in his new environment.

In essence, Article 12 of the Hague Convention establishes a presumption that a child should always be returned to the country of his habitual residence once the custodial rights of the petitioner have been demonstrated. However, in addition to the "settled-environment" exception, Article 13 provides that the abductor can rebut this presumption by showing, *inter alia,* that "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Article 13(b).

■ Before the trial court, appellant did not attempt to refute appellee's evidence indicating that his removal of Ryan from Australia had been wrongful under the Hague Convention. Instead, he argued that both the settled-environment exception and the grave-risk exception were applicable in this case. In moving for psychological testing, appellant asserted that the results of such testing would be relevant to the latter exception because they would show that he was the better parent.

■ However, in interpreting Article 13, the courts in this country have expressly held that the scope of a trial court's inquiry under the grave-risk exception is extremely narrow. In *Tahan v. Duquette* (App.1992), 259 N.J.Super. 328, 613 A.2d 486, the court held that proposed testimony concerning the nature of the child's life in this country was irrelevant to the determination under Article 13(b):

"We agree with the trial judge that the Article 13b inquiry was not intended to deal with issues or factual questions which are appropriate for consideration in a plenary custody proceeding. Psychological profiles, detailed evaluations of parental fitness, evidence concerning lifestyle and the nature and quality of relationships all bear upon the ultimate issue. The Convention reserves these considerations to the appropriate tribunal in the place of habitual residence * * *." *Id.* at 333, 613 A.2d at 489.

Although ultimately concluding that the inquiry under Article 13(b) involves more than a "cursory" review of the civil stability in the country of habitual residence, the *Tahan* court determined that any proposed evidence on this issue must pertain to the environment in which the child will reside upon returning to the home country.

In moving for psychological testing in the instant case, appellant did not assert that the results of the testing would produce evidence as to the basic environment in Australia and the type of individuals, besides appellee, with whom Ryan would have to live. Instead, the testing would only produce evidence which would normally be considered in a custody proceeding. Pursuant to the *Tahan* holding, such evidence is irrelevant to the issues raised under the grave-risk exception.

Thus, as the trial court did not err in denying appellant's motion, his first assignment is without merit.

■ During the course of the trial, appellant attempted to present evidence concerning appellee's lifestyle and the manner in which she had provided for Ryan prior to the date of the abduction in 1991. In ruling upon appellee's multiple objections, the trial court ruled that this proposed evidence was inadmissible. Under his second assignment, appellant maintains that the court's ruling was erroneous because this evidence was relevant to the issue of whether Ryan would be subjected to a grave risk of physical or psychological harm upon returning to Australia.

Near the conclusion of his case before the trial court, appellant made a proffer of the proposed evidence. A review of the proffer indicates that none of this evidence would have pertained to the basic environment which presently exists in Australia and the basic nature of the individuals with whom Ryan would live. Instead, the evidence pertained only to appellee and her prior lifestyle.

■ Although this type of evidence would certainly be relevant in a plenary custody proceeding, this court concludes that it is irrelevant to the question of whether the grave-risk exception is applicable. In relation to this point, we would note that Article 13 states that in determining whether a grave risk of harm exists, a trial court must consider the social background of the child in the home country. This language supports the conclusion that this exception is applicable only when the general environment of the home country poses a risk, not the specific environment in which the child will live.

As appellant's proposed evidence did not pertain to the general environment in Australia, it was irrelevant to the issues before the trial court. Thus, as the court did not err in excluding the testimony, appellant's second assignment is likewise without merit.

■ Under his next assignment, appellant challenges the trial court's conclusion that Ryan has not become "settled" in his new environment in Ohio. In support of this particular argument, appellant emphasizes that during the trial, he introduced evidence indicating that Ryan had not only developed relationships with members of appellant's family, but had also made new friends. Based upon this, appellant contends that the trial court erred in holding that the settled-environment exception did not apply.

Evidence presented by both parties at trial clearly established that approximately three years had elapsed between Ryan's abduction and the filing of appellee's petition. Accordingly, pursuant to Article 12 of the Hague Convention, a petition for the return of a child can be denied if the abductor demonstrates that the child has become settled in the new environment.

In concluding that appellant had not carried his burden of proof as to this exception, the trial court found that appellant had exposed Ryan only to a limited group of friends and relatives. Our review of the record supports this conclusion. While Ryan may have made new friends, the record shows that these friends were limited to the children of appellant's prior acquaintances, *i.e.*, people whom appellant could trust. Moreover, appellant failed to present any evidence that Ryan had made any friends in the community in which they lived. In addition, the evidence at trial clearly established that appellant and Ryan had been living in Ohio only for approximately ten months prior to the filing of the petition.

In support of its conclusion, the trial court also emphasized that appellant had not presented any evidence indicating that he had enrolled Ryan in school or any other activities. Given that Ryan is only five years old, the fact that he has not been enrolled in any organized activities would not indicate, in and of itself, that appellant was attempting to hide Ryan's identity.

■ However, as to this point, we would note that under Section 4(e)(2)(B) of the International Child Abduction Remedies Act, appellant had the burden of showing by a preponderance of the evidence that Ryan was now "settled" in the new environment in this country. At trial, appellant did not show that Ryan had developed the connections to the community which a normal child of his age would, *i.e.*, appellant did not show that Ryan had developed relationships with other individuals besides those which appellant specifically chose. Under these circumstances, appellant failed to carry his burden of proof.

Given the lack of evidence, the trial court did not err in holding that Ryan had not become "settled" in the new environment. Thus, appellant's third assignment is without merit.

■ Under his final assignment, appellant contends that the trial court erred in finding that Ryan would not be subjected to a grave risk of physical or psychological harm by returning to Australia. Although the court did not allow appellant to introduce the majority of the evidence which he sought to present, he still contends that the evidence he presented was sufficient to carry his burden of proof as to this particular exception. In support of this argument, he maintains that the testimony he was allowed to introduce indicated that Ryan would be psychologically harmed by being separated from him.

As to this point, this court would again note that in order to establish a grave risk under Article 13(b), the abductor must present evidence concerning the nature of the general environment in the home country. Although evidence concerning the possible harm caused by the separation would be relevant in a plenary custody proceeding, it is not relevant to the issue raised in the grave-risk

exception. To hold otherwise would alter the nature of the proceeding under the Hague Convention.

In support of its judgment as to the grave-risk exception, the trial court held that the relevant evidence had supported the conclusion that the return of Ryan to Australia did not pose a grave risk to his physical or psychological well-being. Our review of the record supports the trial court's holding. As part of his case, appellant presented the testimony of a psychologist who had met with Ryan on a number of occasions. During cross-examination, this witness stated that in his opinion, Ryan's proposed return to Australia, in and of itself, did not present a risk of psychological harm. This same conclusion was also reached by a social worker who had had contact with Ryan.

Section 4(e)(2)(A) of the International Child Abduction Remedies Act states that the grave-risk exception under Article 13(b) must be demonstrated by clear and convincing evidence. Section 11603, Title 42, U.S.Code. Since the record before us indicates that appellant failed to carry this burden, the trial court did not err in concluding that appellant had not demonstrated a grave risk of psychological harm. Thus, appellant's final assignment is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., CHRISTLEY and NADER, JJ., concur.